RYMER, Circuit Judge,
dissenting:
Like Judge Kruse, the Court Administrator, Madelyn Botta, is sued for damages and like him, I believe she is entitled to immunity. As the majority recognizes, the judge was performing a judicial function when he declined on the first day of trial (June 21, 1995) to order videotext display for Duvall and when he denied Duvall’s motion for a new trial (August 11) based on the absence of real time assistance at trial. Botta’s actions were functionally no different. For essentially the same reasons that Judge Kruse is absolutely immune, the Court Administrator should be, too.
Duvall argues that Judge Kruse acted in an administrative capacity in denying Du-vall’s request for accommodation and that “he has no immunity to share with the remaining defendants.” The majority holds otherwise with respect to the judge, and I agree. Duvall’s argument that Botta lacks immunity stems from the same premise — that Judge Kruse was performing an administrative, not a judicial, function, therefore so was the Court Administrator. As we unanimously reject this premise, this should be the end of the matter.
Court clerks or administrators are entitled to absolute immunity from liability for damages “when they perform tasks that are an integral part of the judicial process.” Mullis v. United States Bankruptcy Court, 828 F.2d 1385, 1390 (9th Cir.1987) (court clerks have absolute quasi-judicial immunity for filing decision).[1] *1143 Here, assuming Duvall’s version is true, he approached Botta before trial for videotext assistance at trial. Botta declined to talk to Duvall because he was represented by counsel, but told him to make his request in the form of a motion to the court. Duvall does not dispute that Botta did not have authority to grant his request once litigation was underway. He in fact asked the judge presiding over his divorce for real time accommodation on the first day of trial. The judge denied the request. This was clearly a discretionary judicial decision. See e.g., United States v. Mayans, 17 F.3d 1174, 1181 (9th Cir.1994) (considering coui't’s withdrawal of interpreter and recognizing trial courts’ considerable discretion as to manner in which they protect a defendant’s right to testify and to confront witnesses); In re Marriage of Olson, 69 Wash.App. 621, 850 P.2d 527, 529 (1993) (“The appointment of interpreter is within the discretion of trial court.”).
Neither Duvall nor the majority explains why Botta’s instruction to take his request to the judge was not part of the judicial process. Nor does either explain why she should not be bound (or least not be properly guided) by the judge’s decision at trial when she was later consulted by the county ADA coordinator with regard to Du-vall’s post-trial request for accommodation at a post-trial hearing.
Beyond this, even if Botta had authority to arrange for sign-language interpreters, which is all she ever said, and even if that authority included arranging for other forms of assistive devices for the hearing impaired, as the majority implies, there is nothing in the record or in Washington law to suggest that she was required to use her authority in any particular way in any particular case. Cf. Antoine v. Byers & Anderson, Inc., 508 U.S. 429, 113 S.Ct. 2167, 124 L.Ed.2d 391 (1993) (declining to extend judicial immunity to court reporters who are afforded no discretion in carrying out statutory duty to record verbatim court proceedings in their entirety). Washington law provides for appointment of qualified interpreters to interpret proceedings for a hearing impaired person by an “appointing authority,” defined as the “presiding officer or similar official of any court, department, board [etc].” RCW 2.42.120; 2.42.110; see also Washington Court General Rule 11 (providing for use of qualified interpreters in judicial proceedings involving hearing impaired individuals). These statutes contemplate a “determination, on the basis of testimony or stated needs” that the interpreter is able to interpret communication effectively. RCW 2.42.130. I am not sure that these are the statutes to which Botta referred, but regardless, it is evident to me that determinations about the needs of hearing impaired litigants are inherently discretionary judgments, whether made wholly by the presiding judicial officer or partly by his designee.
However you slice it, determining whether a particular hearing impaired individual needs accommodation for a court proceeding, and what kind of accommodation is reasonable, entails the power of decision. It is either a judicial function, or comparable to one. It is not administrative,[2] legislative, or executive. Judges may *1144 delegate some part of this function to the court administrator or clerk of court, but at the end of the day the function is, and remains, judicial.
In addition, Duvall was not without redress for he could appeal the judge’s rulings. As the Supreme Court has observed, “[mjost judicial mistakes or wrongs are open to correction through ordinary mechanisms of review, which are largely free of the harmful side-effects inevitably associated with exposing judges to personal liability.” Forrester v. White, 484 U.S. 219, 227, 108 S.Ct. 538, 98 L.Ed.2d 555 (1988). Duvall does not need, and should not be allowed, to seek damages from a court administrator for an arguably incorrect determination about his needs or the court’s ability to address them. This is what appeals are for. To withhold judicial immunity from the clerk in these circumstances permits a party, to play the clerk off against the judge, an unseemly as well as unnecessary distraction.
Without question, the judge is the final decision-maker with respect to proceedings in his court. RCW 2.28.010. For this reason, aside from immunity, I do not see how Duvall could be injured by any thing Botta did or didn’t do, or how Kitsap County, non-court personnel such as Razey and Richardson could have told the judge what to do. Washington judges are state actors, whose authority comes from the state not the county. Wash. Const., Art. IV, § 1; see Keenan v. Allan, 889 F.Supp. 1320, 1363 (E.D.Wash.1995) (judges are officers of Washington State). As we have held in connection with a similar system elsewhere, a county cannot be liable for judicial conduct it lacks the power to control. Eggar v. City of Livingston, 40 F.3d 312, 314-15 (9th Cir.1994).
Accordingly, I would affirm.

. See also Moore v. Brewster, 96 F.3d 1240, 1244 (9th Cir.1996) (according immunity to clerk of the United States District Court for the Southern District of California given na *1143 ture of the responsibilities); Sharma v. Stevas, 790 F.2d 1486 (9th Cir.1986) (clerk of United States Supreme Court has quasi-judicial immunity); Morrison v. Jones, 607 F.2d 1269, 1273 (9th Cir.1979) (court clerk's “failure . to perform a ministerial duty [giving notice of order] which was a part of judicial process is also clothed with quasi-judicial immunity”); Shipp v. Todd, 568 F.2d 133, 134 (9th Cir.1978) (recognizing quasi-judicial immunity for clerk of Montana state court from damages but not injunctive relief); Harmon v. Superior Court, 329 F.2d 154, 155 (9th Cir.1964) (recognizing absolute immunity for county clerk and other judicial personnel).

. "Administrative functions are actions which are significant independent of the fact that the actor is a judge, such as the hiring or firing of staff members.” Partington v. Gedan, 961 *1144 F.2d 852, 866 (9th Cir.1992) (citing Forrester v. White, 484 U.S. 219, 228-30, 108 S.Ct. 538, 98 L.Ed.2d 555 (1988)).